UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER NASRALLAH, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:25-cv-00285-AGF |
| ) | |
| MARK ZVIBLEMAN, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' motion (ECF No. 21) to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, for a more definite statement pursuant to Rule 12(e). For the reasons set forth below, the Court will grant Defendants' motion to dismiss in part, solely as to Plaintiffs' single federal claim. The Court will decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims and will dismiss those claims without prejudice.

## BACKGROUND

Plaintiffs Christopher Nasrallah and the two companies he owns, Plaintiffs Rock Road Equities, LLC ("Rock Road") and Double Bubble Coin Laundry, LLC ("Double Bubble"), bring this lawsuit against Defendant Mark Zvibleman, a general receiver appointed by the Circuit Court of St. Louis County, Missouri in connection with an underlying lawsuit between Nasrallah and his former business partner, non-party Michael Rizzo, captioned *Christopher Nasrallah v. Michael Rizzo et al.*, Cause No. 21SL-

CC04848 (the "Underlying Lawsuit").[1] Also named as Defendants are two companies that Plaintiffs allege are owned and controlled by Zvibleman, Infinity and Beyond Property Management, LLC and Infinity Commercial Group of St. Louis, LP (collectively, the "Infinity Defendants"), and an employee of those companies, Valerie Rizzello.

In the Underlying Lawsuit, Nasrallah and Rizzo each claimed that the other withheld certain books, records, and information, and caused fraudulent transfers by Rock Road and Double Bubble (collectively, the "Subject Entities"). On April 12, 2023, the court appointed Zvibleman as successor receiver, at Nasrallah's request (following the prior receiver's inability to continue his duties), due to the deterioration of the relationship between Nasrallah and Rizzo. Zvibleman's receivership was terminated by the state court's order on March 28, 2024. However, Plaintiffs allege that Zvigleman failed to terminate the receivership and continued to propound discovery and make payments after the receivership had been terminated. Zvibleman still had not filed discharge papers for the receivership at the time Plaintiffs filed the instant lawsuit, March 7, 2025.

In the current lawsuit, Plaintiffs allege that Zvibleman abused his role as general receiver by driving up costs and fees, driving down profits, embezzling money, self-dealing by hiring his own companies (the Infinity Defendants) to perform work with

---

[1] The facts summarized in this Memorandum and Order are drawn from the pleadings, documents incorporated into the pleadings by reference, and public records of which the Court may take judicial notice. *See Podraza v. Whiting*, 790 F.3d 828, 833 (8th Cir. 2015) (listing documents properly considered on a motion to dismiss).

respect to the Subject Entities without disclosing his interest in those companies, failing to sell or liquidate the receivership assets as the state court ordered, leaving Plaintiffs' property in a state of disrepair, and ignoring the state court order to terminate his receivership.

Plaintiffs allege that on October 17, 2024, the state court granted them the ability to bring suit against Zvibleman pursuant to the Missouri Commercial Receivership Act, Mo. Rev. Stat. § 515.600.  Plaintiffs thus filed a complaint in this Court, invoking the Court's federal-question jurisdiction under 28 USC § 1331 with respect to a single federal claim: violation of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962 ( "RICO"), 18 U.S.C. § 1962(c).  Plaintiffs also assert nine state-law claims against Defendants and invoke the Court's supplemental jurisdiction under 28 USC § 1367 with respect to those claims.[2]

As noted above, Defendants now seek to dismiss the complaint for failure to state a claim or, alternatively, for a more definite statement.  Specifically, Defendants argue that they are entitled to immunity under the Missouri Commercial Receivership Act for all acts and omissions arising out of Zvibleman's duties as receiver and within the scope of his appointment.  Further, Defendants move to dismiss all claims not specifically raised in Plaintiffs' application with the state court for leave to bring this action against the receiver.

As to the merits of Plaintiffs' claims, Defendants argue that Plaintiffs fail to state a

---

[2]   As the opposing parties share Missouri citizenship, there is no diversity jurisdiction in this case.

3

claim for a RICO violation because Plaintiffs fail to plausibly allege the existence of an enterprise or Defendants' association with the enterprise, and Plaintiffs fail to sufficiently plead facts supporting racketeering activity or a pattern of racketeering activity. With respect to Plaintiffs' state law claims, Defendants argue that Zvibleman did not owe any duties to Plaintiffs, Plaintiffs fail to allege fraud with particularity, and Plaintiffs fail to plausibly plead causation or damages with respect to certain claims. Alternatively, Defendants move for a more definite statement with respect to specific allegations of Zvibleman's wrongdoing.

The Court concludes that Plaintiffs have failed to state a claim under RICO because they fail to plead a RICO predicate act of racketeering, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Therefore, the Court will limit its discussion to only those facts and arguments relevant to its analysis.

## DISCUSSION

### RICO Claim (Count IX)

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff's claims must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

4

RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of" its substantive provisions.  18 U.S.C. § 1964(c).  As relevant here, § 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).

"A violation of § 1962(c) requires [Plaintiffs] to show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1053 (8th Cir. 2024) (citation omitted).  Further, a "civil RICO plaintiff must show injury . . . both factually and proximately caused by the violation." *Id.* (citation omitted).

Finally, "the particularity requirements of [Federal Rule of Civil Procedure] 9(b) apply to allegations of mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, when used as predicate acts for a RICO claim." *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995) (citations omitted).  This requires pleading "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Id.*  These strict requirements for pleading a RICO violation "are not easily met." *UMB Bank*, 89 F.4th at, 1053.

Plaintiffs allege that Defendants committed the following predicate acts that, according to Plaintiffs, constitute mail and wire fraud:

5

>    a. Inflated invoices and construction oversight fees;
>    b. Unauthorized property management fees;
>    c. Unauthorized leasing commissions;
>    d. Insurance fraud; and
>    e. Receiving over that same time period payments for said unlawfully inflated invoices, oversight fees, management fees, and commissions.

ECF No. 1, Compl. ¶ 238.  Plaintiffs allege that these fees, commissions, insurance claims, and payments were fraudulent because of Defendants' failure to accurately report them to the parties and the state court as part of the receivership litigation.

Specifically, Plaintiffs allege that the mailing of the checks, statements, fees, and commissions constituted mail and wire fraud because they contained "fraudulently inflated amount[s] which [were] not reported to the [p]arties or the [state] [c]ourt by Defendant Zvibleman," such that each mailing "constitutes a separate and distinct example of mail and wire fraud."  *Id.* ¶¶ 245-47.

The Eighth Circuit, as well as most other circuits to consider the issue, have made clear that even "fraudulent" litigation activities, without more, "cannot constitute a RICO predicate act."  *UMB Bank*, 89 F.4th at 1055 (quoting *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018)).  In *UMB Bank*, the Eighth Circuit affirmed the dismissal of a RICO claim arising from a state probate case, in which a trustee accused the trust beneficiaries of making false and fraudulent allegations of trust mismanagement to the probate court in order to pressure the trustee to pay the beneficiaries more money.  *UMB Bank*, 89 F.4th at 1052-53.  The trustee alleged that these false allegations contained in the filings of the underlying probate case constituted mail and wire fraud.  *Id.*  The Eighth Circuit rejected that argument, reasoning that "to hold otherwise would result in the inundation of federal

6

courts with civil RICO actions that could potentially subsume all other state and federal litigation in an endless cycle where any victorious litigant immediately sues opponents for RICO violations." *Id.* at 1055 (citation omitted).

This Court is compelled to reach the same conclusion.  The allegations here are substantially similar to those rejected in *UMB Bank*, albeit somewhat the inverse: the receiver in the underlying state court case here is being accused of filing and mailing fraudulent documents in context of the litigation.  But the result is the same.  The allegedly fraudulent court filings do not constitute racketeering activity under RICO.

The line of cases that the Eighth Circuit relied on in *UMB Bank* likewise confirm that the litigation activities alleged by Plaintiffs here cannot constitute a RICO predicate act.  For example, the appellate courts in these cases held that sworn declarations containing "fraudulent representations" and which were mailed and filed in court allegedly for the sole purpose of extorting money out of a litigant were not RICO predicate acts.  *Kim* , 884 F.3d at 103-04 (collecting similar cases).  Likewise, these courts have held that "perjury does not constitute an act of racketeering," and that proffering "false affidavits and testimony to the state court" is not a RICO predicate act.  *Gabovitch v. Shear*, 70 F.3d 1252 (1st Cir. 1995); *see also Deck v. Engineered Laminates*, 349 F.3d 1253, 1257–58 (10th Cir. 2003) (collecting cases for the proposition that even "fraudulent pleadings or false testimony regarding material facts" designed to extort money out of a litigant do not constitute racketeering activity).

In short, the Court agrees with Defendants that here, at best, "the entire alleged scheme involved the creation of fraudulent court documents." *Kim*, 884 F.3d at 105.

7

Plaintiffs have not pled—certainly not with particularity—any illegal activity other than defrauding the courts by misstating or omitting information from various court filings. This is insufficient to state a RICO claim.  Therefore, the Court will dismiss Count IX.[3]

**State-Law Claims (Counts I-VIII, and X)**

"In the usual case where all federal claims are dismissed . . . , the balance of factors to be considered under the supplemental jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Starkey v. Amber Enterprises, Inc.*, 987 F.3d 758, 765 (8th Cir. 2021) (citation omitted); *see also* 28 U.S.C. § 1367(c).  Given the early stage of this case and the Court's dismissal of the only federal claim, the Court will exercise its discretion to decline supplemental jurisdiction over Plaintiffs' state-law claims and will dismiss those claims without prejudice.

## CONCLUSION

Accordingly, and for the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss Plaintiffs' complaint is **GRANTED in part**, as set forth above.  ECF No. 21.  Count IX is **DISMISSED with prejudice** for failure to state a claim.  The Court declines to exercise supplemental jurisdiction over the remaining Counts, which are **DISMISSED without prejudice**.

---

[3]     Plaintiffs have not asked for leave to amend and have not suggested that they could cure the pleading deficiencies here with a non-futile amended RICO claim.  Therefore, the dismissal of Count IX will be with prejudice.

8

All claims against all parties having been resolved, the Court will enter a separate Order of Dismissal.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 24th day of June, 2025.